UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **Merchants Retail Partners Management, LLC,** *et al.* **,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) ) |
| **Kevin Edwin Holst,** *et al.***,** | ) ) ) |
| **Defendants.** | ) ) |

Case No.: 2:23-cv-01194-MHH

## MEMORANDUM OPINION

In their complaint in this matter, plaintiffs Merchants Retail Partners Management, LLC and Leitbox Portfolio Partners, LLC assert that defendants Kevin Edwin Holst, Matthias Kellmer, and Spartan Investment Group, LLC – SIG – violated the Alabama Trade Secrets Act.  The plaintiffs also assert claims against the defendants under Alabama law for tortious interference with business relations, breach of contract, indemnity, breach of fiduciary duty, civil conspiracy, and spoilation of evidence.  (Doc. 1-1, pp. 19-26).  The defendants contend that this Court lacks jurisdiction over them, and they have asked the Court to transfer this matter to the United States District Court for the District of Colorado pursuant to 28 U.S.C. §§ 1404 and 1406 "and other applicable law."  (Doc. 6).

This opinion resolves the defendants' motion to transfer.  First, the Court describes the procedural standards for the defendants' challenges to personal

1

jurisdiction and venue. Next, the Court summarizes the plaintiffs' allegations against the defendants and the evidence the parties have submitted concerning personal jurisdiction and venue. Finally, the Court describes the legal standards that govern personal jurisdiction and motions to transfer venue and applies those standards to the record in this case to resolve the defendants' motion.

## I.

The details of the defendants' motion shed light on its true nature. The defendants devote the first 11 pages of the 16-page discussion section in their motion to the factors relevant to transfers under 28 U.S.C. § 1404 for the convenience of the parties and the interest of justice. (Doc. 6, pp. 11–22). The defendants use the final five pages of their discussion to argue that this Court lacks jurisdiction over them such that the Court, pursuant to 28 U.S.C. § 1406, should transfer the case to a jurisdiction that may exercise jurisdiction over them. (Doc. 6, pp. 22–27). Tellingly, the defendants did not move to dismiss this action pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue. Rather, the defendants answered the complaint, (Doc. 3); preserved in their answer the defenses of lack of personal jurisdiction and improper venue, (Doc 3, pp. 15–16, ¶¶ 75, 76, 78); and moved to transfer venue, (Doc. 6).

Given the way the defendants have framed their motion, the Court does not set forth the rather lengthy procedural standards that come into play when a

2

defendant mounts a full-scale challenge to personal jurisdiction. Instead, at this early stage of the litigation, the Court accepts as true Merchants's and Leitbox's allegations in their state court complaint for purposes of evaluating the parties' arguments concerning jurisdiction. *Reynolds v. Behrman Capital IV L.P.*, 988 F.3d 1314, 1317 (11th Cir 2021). The Court presents the alleged facts accordingly, with the understanding that evidence developed later in the case may support all, some, or none of the facts Merchants and Leitbox have alleged in their complaint.

As to motions to transfer venue, "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). When deciding motions for transfer of venue, a district court may consider information provided in affidavits. *See Marmol v. Adkins*, 655 F.2d 594, 596 (5th Cir. 1981) (explaining that arguments regarding venue were unpersuasive because they were "not supported by affidavit or other evidence"); *Marbury-Pattillo Constr. Co., Inc. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir. Sept. 8, 1974) (describing affidavits in support of and in opposition to motion for change of venue).[1] The Court must take the facts alleged

---

[1] The Fifth Circuit issued the *Marmol* decision on September 8, 1981. Consequently, that decision and the *Marbury-Pattillo* decision are binding precedent in this circuit. *Bonner v. City of* Prichard, 661 F.2d 1206 (11th Cir. 1981) (holding that "the decisions of the United States Court of Appeals

in the complaint as true, "to the extent they are uncontroverted by defendants' affidavits," and the Court must "construe all reasonable inferences in favor of [Merchants and Leitbox]." *Delong Equip. Co. v. Wash. Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir. 1988).

## II.

Merchants and Leitbox assert that they are sister companies that specialize in locating, developing, and managing self-service storage facilities throughout the United States. (Doc. 1-1, pp. 12–13, ¶ 2). Merchants is based in Birmingham, Alabama. (Doc. 1-1, pp. 12, 16, 17, ¶¶ 1, 12, 13). In January 2023, Merchants and Leitbox hired Mr. Holst, a lawyer in Nashville, Tennessee, to serve as the chief operating officer of the companies. (Doc. 1-1, pp. 13, 17, ¶¶ 3, 4, 19). The companies invested in Mr. Holst's training for the position and shared with him information about the companies' trade secrets and their strategies for developing self-storage facilities. (Doc. 1-1, pp. 14, 18, ¶¶ 6, 21). The companies familiarized Mr. Holst with "highly sought after industry contacts, key compliance officer relationships," and private equity fund managers and financial advisors who

---

for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.")

Merchants and Leitbox planned to target at an industry conference in March 2023. (Doc. 1-1, pp. 14, 15, ¶¶ 5, 8).

Three days before the conference was to begin, Mr. Holst notified Merchants and Leitbox by email that he was resigning as COO. (Doc. 1-1, pp. 14–15, ¶ 6). A few weeks later, Merchants and Leitbox learned that Mr. Holst was working for SIG, a commercial real estate firm located in Golden, Colorado. (Doc. 1-1, pp. 15, 17, ¶¶ 9, 16). Historically, SIG had been in the multi-family real estate development industry; however, in 2022, SIG expanded into the public self-storage industry. (Doc. 1-1, p. 16, ¶ 10). SIG began competing with Merchants and Leitbox for investors that were key to Merchants's and Leitbox's business plan. (Doc. 1-1, p. 16, ¶ 9).

Mr. Holst "used his unique position as [COO], a position of trust, confidence and influence, to exploit [plaintiffs'] Trade Secrets for personal gain." (Doc. 1-1, p. 16, ¶ 11). Mr. Holst shared those secrets with SIG. (Doc. 1-1, p. 18, ¶ 24). Mr. Kellmer used the information Mr. Holst provided to SIG to recruit key employees to SIG. (Doc. 1-1, p. 19, ¶¶ 28–30).[2] As a result, Merchants and Leitbox lost key personnel. (Doc. 1-1, p. 22, ¶ 47). Weeks after Mr. Holst resigned as COO of

---

[2] The Court has not found in the complaint an allegation that describes Mr. Kellmer's role at SIG. Mr. Kellmer resides in Utah and works remotely for SIG. (Doc. 6-2, p. 2).

Merchants and Leitbox, he returned his laptop to the company, but the files were deleted from the computer. (Doc. 1-1, p. 19, ¶ 31; *see also* Doc. 6-1, pp. 4–5, ¶ 30).

As noted, Merchants and Leitbox assert claims against SIG, Mr. Holst, and Mr. Kellmer for violation of the Alabama Trade Secrets Act, conspiracy, tortious interference, breach of contract, breach of fiduciary duties, and spoilation of evidence. (Doc. 1-1). Both Merchant and Leitbox are limited liability companies with their principal place of business in Alabama. (Doc. 12-1, p. 2). The sister companies developed their trade secrets in Alabama. (Doc. 12-1, p. 3). Merchant and Leitbox have identified eight non-party witnesses; six reside in Alabama, and two reside outside of Alabama. (Doc. 12-1, p. 4). The two out-of-state witnesses are employed with the sister companies and regularly commute to Alabama. (Doc. 12-1, p. 4). Neither Merchant nor Leitbox conducts business in Colorado or has offices or employees in Colorado. (Doc. 12-1, p. 2).

SIG is a limited liability company with its principal place of business in Colorado. (Doc. 6-1, p. 5, ¶ 37). SIG does not do business in the state of Alabama. (Doc. 6-1, p. 6). SIG does not have employees or contractors in Alabama. (Doc. 6-1, p. 6). None of SIG's members reside in or are citizens of Alabama. (Doc. 6-1, p. 6, ¶¶ 39-40).

As mentioned, Merchants and Leitbox recruited Mr. Holst to work remotely as COO while he was living in Tennessee. (Doc. 6-1, p. 3, ¶¶ 18-19). During the

6

seven weeks he was employed with the sister companies, Mr. Holst worked from his Tennessee residence and visited Alabama for an interview and for the companies' two-day annual meeting. (Doc. 6-1, p. 4, ¶¶ 21-25). In July 2023, Mr. Holst moved from Tennessee to Colorado. (Doc. 6-1, p. 5, ¶¶ 32-34). Mr. Holst is domiciled in and a permanent resident of Colorado. (Doc. 6-1, p. 2, ¶¶ 7-8). Mr. Holst is not a citizen of Alabama and does not live or own property in Alabama. (Doc. 6-1, p. 3, ¶¶ 14-15).

Mr. Kellmer is a citizen of Utah. (Doc. 6-2, p. 2). Mr. Kellmer works remotely for SIG from his residence in Utah. (Doc. 6-2, p. 2). Mr. Kellmer does not reside in, have contacts with, or own property in Alabama. (Doc. 6-2, p. 3). Mr. Kellmer has never worked in the state of Alabama. (Doc. 6-2, p. 3).

In addition to the Alabama state-law claims Merchants and Leitbox have asserted against the defendants, the defendants have filed counterclaims against Merchants and Leitbox. Mr. Holst asserts a breach of contract claim against Merchants and Leitbox, and the defendants assert a claim against Merchants and Leitbox under the Alabama Litigation Accountability Act. (Doc. 3, pp. 30-32).

### III.

A district court assesses personal jurisdiction over nonresident defendants using a two-part test. First, a district court must consider whether it may "obtain personal jurisdiction over the defendants pursuant to the applicable state long-arm

statute." *Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992). If the court answers the first question in the affirmative, then the district court must "consider whether the exercise of personal jurisdiction would violate the due process clause of the Fourteenth Amendment to the United States Constitution." *Olivier*, 979 F.2d at 830.

Under Alabama law, Alabama's long arm statute permits a court in Alabama to exercise personal jurisdiction over a person or entity when either "has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States." Ala. R. Civ. P. 4.2. The Supreme Court of Alabama has held that Rule 4.2 "extend[s] the jurisdiction of Alabama courts to the [fullest] extent permissible under the due process clause of the Fourteenth Amendment." *Olivier*, 979 F.2d at 830 (citing *Alabama Waterproofing Co., Inc. v. Hanby,* 431 So. 2d 141, 145 (Ala. 1983)); *Hanby*, 431 So. 2d at 145 ("[*I*]*n personam* jurisdiction of an Alabama court under Rule 4.2(a)(2), ARCP, is as broad as the permissible limits of due process.").

The principle of due process "requires the defendant have fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign," and the "fair warning requirement is satisfied if the defendant has purposefully directed his activities at the forum, [ ] and the litigation results from alleged injuries that arise

8

out of or relate to those activities." *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (internal quotations and citations omitted). When a nonresident defendant allegedly commits an intentional tort, a district court may exercise jurisdiction over the defendant whose conduct was "expressly aimed at a specific individual in the forum whose effects were suffered in the forum," even when the nonresident defendant "has no other contacts with the forum." *Licciardello v. Lovelady*, 544 F.3d 1280, 1285, 1288 (11th Cir. 2008) (citing *Calder v. Jones,* 465 U.S. 783, 789–790 (1984)). Indeed, the forum state "has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in" the forum. *Licciardello*, 544 F.3d at 1288 (citation omitted).

In *Calder v. Jones*, "[t]he Supreme Court concluded that '[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.'" *Licciardello*, 544 F.3d at 1285 (quoting *Calder,* 465 U.S. at 790).[3] In these circumstances, "[t]he Constitution is not offended by [the forum court's] assertion of its jurisdiction over such nonresident tortfeasors." *Licciardello*, 544 F.3d at 1288 (citation omitted). To establish personal jurisdiction over a nonresident defendant who allegedly has committed an intentional tort, a plaintiff must allege an intentional tort aimed at the

---

[3] *See also Licciardello*, 544 F.3d at 1288 (stating that a plaintiff "injured by the intentional misconduct of a nonresident expressly aimed at the [] plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy").

9

forum state that caused harm that the defendant "should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286 (citation omitted).

Here, this Court's exercise of jurisdiction over SIG, Mr. Holst, and Mr. Kellmer does not offend the principle of due process because Merchants and Leitbox have asserted intentional tort claims against the nonresident defendants for conduct that the defendants allegedly aimed at Merchants and Leitbox in Birmingham, Alabama. Merchants and Leitbox allege that Mr. Holst acquired the sister companies' trade secrets and shared the trade secrets with SIG and Mr. Kellmer. The defendants allegedly conspired and used the trade secrets to compete with Merchants and Leitbox in the self-storage industry and to poach the plaintiffs' employees. (Doc. 1-1). Among other claims, Merchants and Leitbox assert claims for intentional interference with business relations and civil conspiracy.

Alabama has a strong interest in affording its residents a forum for relief from harm suffered at the hands of nonresidents who target Alabama citizens. *Licciardello*, 544 F.3d at 1288 (citations omitted). Thus, this Court may exercise jurisdiction over SIG, Mr. Holst, and Mr. Kellmer.

## IV.

Because the Court may exercise jurisdiction over the defendants, 28 U.S.C. § 1406 does not afford a basis for transferring this case to another district.[4] That leaves 28 U.S.C. § 1404(a) as a vehicle for transfer. That statute provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Here, the parties have not consented to a particular venue. Therefore,

---

[4] Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406.

> This question—whether venue is "wrong" or "improper"—is generally governed by 28 U.S.C. § 1391 (2006 ed., Supp. V). That provision states that "[e]xcept as otherwise provided by *law* ... this section *shall* govern the venue of *all civil actions* brought in district courts of the United States." § 1391(a)(1) (emphasis added). It further provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b). When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b). As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3).

*Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 55-56 (2013) (italics in *Atl. Marine Const. Co.*; footnotes omitted). This case falls within one of the three categories set out in § 1391(b).

the Court must consider the following factors to determine whether to transfer this case to the district court in Colorado:

> "[the] relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Ibid.* (internal quotation marks omitted). The Court must also give some weight to the plaintiffs' choice of forum. *See Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

*Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62 n. 6 (2013). The Court must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Const. Co.*, 571 U.S. at 62–63 (quoting 28 U.S.C. § 1404(a)).

From the plaintiffs' perspective, the Northern District of Alabama is by far the more convenient forum. Bill Leitner, the owner and COO of Merchants and Leitbox, resides in this district. (Doc. 1-1, p. 13, ¶ 3; Doc. 12-1, p. 2, ¶ 1). As noted, Merchants and Leitbox have their corporate offices in this district in Birmingham, Alabama. (Doc. 1-1, pp. 16–17, ¶¶ 12–13; Doc. 12-1, p. 2, ¶ 2). The sister companies maintain in Birmingham documents concerning the trade secrets that the defendants allegedly used without the companies' permission. (Doc. 12-1, p. 3, ¶

12

6). Through his training in Birmingham, Mr. Holst obtained access to those trade secrets. (Doc. 12-2, p. 3, ¶ 9). Merchants and Leitbox have identified at least six non-party witnesses who reside in Alabama and two non-party witnesses who do not reside in Alabama. The latter two witnesses work for the sister companies and commute to Alabama for work. (Doc. 12-2, p. 4, ¶ 12).

For the defendants, Colorado offers a more convenient forum. Mr. Holst resides in Colorado. (Doc. 6-1, pp. 2–3). SIG's business is in Colorado; SIG does not conduct business in the state of Alabama. (Doc. 6-1, p. 5). Mr. Kellmer resides in Utah and works remotely for SIG. (Doc. 6-2, p. 2). He has not had contact with or worked in the state of Alabama. (Doc. 6-2, p. 3).

On balance, most of the witnesses with information concerning the plaintiffs' claims and documentary evidence relating to the plaintiffs' trade secrets are in this district. Therefore, this district offers the greatest access to sources of proof. Counsel for the defendants can travel to Colorado to depose witnesses there and have a videographer record the depositions, giving the defendants the option of avoiding travel to Alabama if this case proceeds to trial. The attorneys can manage the paper discovery for the case electronically, minimizing or obviating inconvenience related to that work. It would be at least equally inconvenient for plaintiffs and defendants to travel for trial, whether the case proceeds in Alabama or Colorado.

The attorneys for the plaintiffs and the defendants practice in Birmingham and are familiar with Alabama law. The plaintiffs and the defendants assert claims against one another under Alabama statutes. (Docs. 1, 3). Because Merchants and Leitbox allege they were harmed in this district through the defendants' intentional conduct and because Merchants and Leitbox selected this district to litigate their claims, justice weighs in favor of allowing Merchants and Leitbox to maintain their claims here.

Because, on balance, transfer will not serve the convenience of parties and witnesses or otherwise promote the interest of justice, the defendants have not established a basis for transferring this case to the United States District Court for the District of Colorado under 28 U.S.C. § 1404.

## V.

Accordingly, the Court denies the defendants' motion to transfer venue. The Clerk shall please TERM Doc. 6 and enter an initial order in this matter. Per the initial order, the parties shall please conduct a Rule 26 meeting within the next 14 days of this order and file a joint report of the parties' planning meeting within three days of the Rule 26(f) meeting. After filing the report of Rule 26(f) meeting report, using the Word template at https://www.alnd.uscourts.gov/content/judge-madeline-h-haikala, the parties shall email to chambers at haikala_chambers@alnd.uscourts.gov in Word a draft scheduling order that

provides proposed deadlines for discovery and dispositive motions and proposed limits on the number of discovery requests. The Court will provide a date for a post discovery status conference.

    **DONE** and **ORDERED** this September 18, 2024.

                                                     **MADELINE HUGHES HAIKALA**
                                                   UNITED STATES DISTRICT JUDGE